JOURNAL ENTRY and OPINION
Defendant Robin Jacobs pleaded guilty to seventeen counts of telephone harassment and five counts of menacing by stalking. The court sentenced the defendant to one year on each count, running some of those counts consecutive to others, for a total of eight years of prison time. The sole claim on appeal is that the consecutive sentences were disproportionate to the seriousness of the offenses and to the danger the defendant poses to the public.
In order for us to reverse the court's decision to impose consecutive sentences, we must find by clear and convincing evidence that (1) the sentence is not supported by the record; (2) the trial court imposed a prison term without following the appropriate statutory procedures; or (3) the sentence imposed was contrary to law. See R.C. 2953.08(G). While the scope of our review has been expanded under R.C. 2953.08(G) to permit us to modify or vacate or remand for resentencing any sentence that is imposed in violation of the sentencing statutes, we are not permitted to substitute our judgment for that of the court. See State v. Jones
(2001), 93 Ohio St.3d 391, 399-400.
As applicable here, consecutive sentences may be imposed when the court finds either that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and when the court finds that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and that the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses would adequately reflect the seriousness of the crime. See R.C.2929.14(E)(4). Not only must the court state the relevant factors for imposing consecutive sentences, but it must also give its reasons for doing so. See R.C. 2929.19(B)(2)(c); State v. Jones,93 Ohio St.3d at 399.
Evidence brought out at the sentencing hearing showed that the counts of telephone harassment and menacing by stalking occurred when the defendant engaged in a long pattern of making anonymous obscene telephone calls to various women he saw while roaming area shopping malls. He would call their place of employment and, if so moved, would sometimes shadow these workers to their cars and leave notes or messages for them. A police detective told the court that the defendant would go through the cars in order to obtain the victims' names and home addresses. On one occasion, he had followed a woman so closely that he commented on her recent manicure. The state represented that these were not isolated instances with the individual workers, but occurred many times for each individual, sometimes as many as twenty calls per victim. Most of the telephone calls were sexually graphic, but in others, the defendant told some of the victims that he would rape them. When one victim questioned whether the defendant would actually follow through with the threat, he said that he would kill her so that she could not have sex with anyone else. One victim who had a note left on her car started to drive away and discovered that someone had removed the tire stem of her new car tires and partially slashed the tire. After the defendant's arrest, the police searched his car and found a nylon mask, binoculars, cameras which contained pictures of some of the victims, and letters to some of the victims.
The defendant served a previous six-month term for telephone harassment, but began the conduct leading to the charges just one month after his release. A court psychiatric report showed that the thirty-six-year-old defendant first became aroused at the age of fifteen at the thought of making obscene telephone calls. He actively began to make obscene telephone calls at age eighteen. The calls were made from various telephone booths in which he would engage in self-gratification while making the calls. The psychiatric report showed that despite two "prolonged periods" of therapy, the defendant continued to make his telephone calls. This deviancy was expanding to include stalking his victims. The defendant was aware that what he was doing was wrong, but could not contain his impulses.
One of the victims appeared before the court and told it that she would live in constant fear if the defendant were not behind bars. She said that she had previously been raped, but did not report the rape for fear that the perpetrator might return to exact revenge upon her. The victim believed that many of the other victims likely felt the same as she did.
After listening to this, the court found that consecutive sentences were necessary to protect the public and punish the offender, and that the consecutive sentences were not disproportionate to the defendant's conduct and the danger he poses. The court also found that the crimes were committed while the defendant was on post-release control. The court believed that the harm was so great or unusual that a single term would not adequately reflect the seriousness of the crime and that multiple prison terms were necessary to protect the public.
The court's findings satisfy the statutory requirements for imposing consecutive sentences. Moreover, the court gave its reasons supporting its decision to impose part of the sentence consecutively. The defendant posed an obvious threat to reoffend, as the one-month interval between his parole and harassment convincingly showed. This threat was further heightened by the escalation of his conduct from telephone harassment to stalking. If the items found in his car at the time of arrest are any indication, the court could reasonably have thought that the defendant may have meant to move even farther into sexual assault. The sentence was not disproportionate to the defendant's conduct.
The harm on the victims was palpable and caused them to live in constant fear that the defendant would again reoffend were he allowed to be free. Certainly, his past failures at therapy did not speak well for his ability to curb his impulses. And it is undisputed that he engaged in this sort of conduct for over twenty years. The victims were aware that he would likely reoffend, even if provided treatment. The assigned error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and COLLEEN CONWAY COONEY, J., CONCUR.